IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-00766-FL

| | |
|---|---|
| **James O. Davis,**<br><br>    Plaintiff,<br><br>v.<br><br>**Nancy A. Berryhill**, Acting<br>Commissioner of Social Security,[1]<br><br>    Defendant. | **Memorandum & Recommendation** |

  Plaintiff James O. Davis instituted this action on August 26, 2016, to challenge the denial of his application for social security income. Davis claims that the Administrative Law Judge ("ALJ") Mason Hogan erred in (1) finding that he had the residual functional capacity ("RFC") to perform a reduced range of sedentary work and (2) assessing his credibility. Both Davis and Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 17, 21.

  After reviewing the parties' arguments, the court has determined that ALJ Hogan reached the appropriate decision. Substantial evidence supports ALJ Hogan's conclusion that Davis has the RFC to perform a reduced range of sedentary work. Additionally, Davis has failed to demonstrate any error in ALJ Hogan's evaluation of his credibility. Therefore, the undersigned

---

[1] Berryhill replaced Carolyn Colvin as the Acting Commissioner of Social Security on January 20, 2017.

magistrate judge recommends that the court deny Davis's motion, grant Berryhill's motion, and affirm the Commissioner's decision.[2]

I.  **Background**

On July 23, 2013, Davis protectively filed applications for disability insurance benefits and supplemental security income. In both applications, Davis alleged a disability that began on April 16, 2012. After his claims were denied at the initial level and upon reconsideration, Davis appeared before ALJ Hogan for a hearing to determine whether he was entitled to benefits. ALJ Hogan determined Davis was not entitled to benefits because he was not disabled. Tr. at 241–55.

ALJ Hogan found that Davis had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; soft tissue injuries from a motor vehicle accident; history of right femur fracture; obesity; and affective disorder. *Id.* at 244. ALJ Hogan found that Davis's impairments, either alone or in combination, did not meet or equal a Listing impairment. *Id.* at 244–45. ALJ Hogan then determined that Davis had the RFC to perform sedentary work, with additional limitations. *Id.* at 246. He can lift, carry, push, or pull up to ten pounds frequently and up to 20 pounds occasionally. *Id.* Davis can stand or walk up to two hours in an eight-hour workday and sit for six hours in an eight-hour workday. *Id.* Davis cannot climb ladders, ropes, or scaffolds but he can occasionally climb stairs and ramps. *Id.* He can occasionally balance and he can frequently kneel, stoop, crouch, and crawl. *Id.* Davis must avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. *Id.* He also requires flexibility to use a hand-held assistive, such as a cane, for walking. *Id.*

ALJ Hogan also determined that Davis is capable of understanding, remembering, and carrying out simple instructions (defined to mean activity that is consistent with a reasoning level

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

of "two" or "three" as defined in the Dictionary of Occupational Titles) ("DOT")). *Id*. He can also sustain attention and concentration sufficient to carry out those simple instructions over the course of an eight-hour workday. *Id*. Davis is limited to work in occupations that require only occasional contact with co-workers, supervisors, and the general public. *Id*. He is also limited to low stress work (defined to mean no fast paced production, only simple work related decisions, and few or no changes in the work setting). *Id*.

ALJ Hogan concluded that Davis is unable to perform his past relevant work as a construction worker, dump-truck driver, or power shovel operator. *Id*. at 252. However, considering his age, education, work experience, and RFC, ALJ Hogan found that there were jobs that existed in significant numbers in the national economy that Davis was capable of performing. *Id*. at 253–54. These include: egg processor, cuff folder, and nut sorter. *Id*. at 253. Thus, ALJ Hogan found that Davis was not disabled. *Id*. at 254.

After unsuccessfully seeking review by the Appeals Council, Davis commenced this action on August 26, 2016. D.E. 6.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

B.   **Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

C.   **Medical Background**

Davis suffers from a number of impairments, including degenerative disc disease, depression, and a history of right femur fracture. Tr. at 243–44. He was involved in a motor vehicle accident in April 2012. *Id.* at 669–80. Davis received treatment for his neck and back

pain at Duke Raleigh Hospital, where providers diagnosed lumbar and cervical strains and prescribed him medications. *Id*.

In May 2012, Davis began treatment with Triangle Orthopaedic for pain in his neck, arm, back, and legs. *Id*. at 592–95. He reported weakness, numbness and tingling, and problems with his grip and gait. *Id.* After reviewing prior x-rays, Roger Ordronneau, PA-C, agreed that cervical degenerative changes were present and recommended conservative treatment with medication. *Id.* Davis complained of continued neck, back, and thoracic pain in a follow-up visit in June, and providers continued his medications. *Id*. at 596–98.

The following month, Davis rated his pain as ten out of ten. *Id*. at 599–601. An MRI later that month showed multilevel facet arthrosis and foraminal stenosis in the cervical spine and L4-5 and L5-S1 disc degeneration of the lumbar spine. *Id*. at 602–05. Providers diagnosed Davis with cervical and lumbar degenerative disc disease and referred him to pain management. *Id*.

In August 2013, Davis went to Franklin Regional Medical Center for exacerbation of his back pain, which radiated into his right lower extremity. *Id*. at 557–62. Examination revealed tenderness and muscle spasms, for which providers prescribed medication. *Id*.

Davis began treatment with Tiffany Levins, PA-C, at Franklin Community Health in October 2013. *Id*. at 582–85. Treatment notes reflect reports of chronic back, joint, right hip, and leg pain for over ten years. *Id*. Records also remarked that Davis used a cane for support. *Id*. Examination showed tenderness to palpation in his lumbar region. *Id*. Levins prescribed medications for Davis after diagnosing him with arthritis, back pain, and hypertension and prescribed medications. *Id*. A follow-up visit later than month reflects complaints of pain and stiffness in Davis's back and joints, for which providers refilled his medications. *Id*. at 578–81.

In December 2013, Davis went to the Emergency Department at Duke Raleigh Hospital for complaints of hematemesis, chronic back pain, and lightheadedness. *Id.* at 572–76, 607–17. Duke admitted Davis and administered intravenous fluids. *Id.* Following an upper endoscopy, providers prescribed medication and discharged Davis after two days. *Id.*

Davis returned to Duke Raleigh Hospital in May 2014 after injuring his chest in a fall. *Id.* at 687–704. Providers diagnosed a contusion of the chest wall, for which they prescribed medications. *Id.*

In February 2015, Davis began seeing Benjamin Hennessee, PA-C, at Rural Health Group. *Id.* at 586–87. Hennessee prescribed medication for Davis's chronic back pain and right arm pain. *Id.* Davis followed-up with Hennessee in March 2015 for medication refills. *Id.* at 588–89.

Regarding his mental impairments, Jessica Drennen, MSW, LCSWA, of Daymark Recovery Services, completed a clinical assessment of Davis in February 2015. *Id.* at 714–24. Davis reported increased forgetfulness, hearing voices, feeling hopeless and worthless, poor sleep, low energy, mood swings, panic attacks, excessive worrying, and flashbacks. *Id.* Drennen noted that his voice was lowered and he appeared sad and withdrawn. *Id.* She assessed Davis with major depressive disorder with panic attacks, for which she recommended individual and group therapy. *Id.*

Later that month, Dr. Victoria Payne at Daymark saw Davis for a psychiatric evaluation. *Id.* at 708–10. He reported first becoming depressed in 2012 following a motor vehicle accident. *Id.* Treatment records reflect symptoms of decreased memory, lack of energy, fatigue, feelings of hopelessness and worthlessness, passive suicidal thoughts, auditory hallucinations, and paranoid ideations. *Id.* Dr. Payne noted that Davis appeared depressed and anxious with a constricted

affect and a congruent mood. *Id*. She prescribed medications. *Id*. Davis continued to complain of depressive symptoms, for which he participated in both group and individual therapy sessions. *Id*. at 757–66.

Coastal Plain Hospital admitted Davis on July 6, 2015, for depression, homicidal ideation, and psychosis *Id*. at 155–70, 208–19. Providers adjusted his medications and discharged him four days later. *Id*. Davis thereafter sought follow-up care at Daymark. *Id*. at 224–30. In August, Nash General Hospital treated Davis for depression, anxiety, suicidal and homicidal ideations, and hallucinations. *Id.* at 130–44. Providers discharged him from in the inpatient psychiatric care unit after two days. *Id*. He again sought follow-up care from Daymark. *Id.* at 146.

In October 2015, Dr. Godfried Arthur of Boice Willis Clinic saw Davis for a follow-up, pain management appointment. Davis stated that he heard voices telling him to go on a rampage, and he was scheduled for psychiatric treatment. *Id*. at 106–09.

Duke Hospital admitted Davis in November for treatment of depression and suicidal thoughts. *Id.* at 49–81, 84, 100–03. Providers prescribed medications and discharged Davis after six days. *Id*. In March 2016, Parham Medical Center admitted Davis for depression and suicidal thoughts. *Id*. at 30–38. He received a psychiatric referral. *Id*. Later that month, Recovery Innovations evaluated Davis for depression and he then reconnected with Daymark for management of this condition. *Id.* at 9–27.

### D. Residual Functional Capacity

Davis contends that ALJ Hogan erred in finding that he had the RFC to perform a reduced range of sedentary work. He argues that the RFC finding that he can lift 20 pounds occasionally and ten pounds frequently is inconsistent with the definition of sedentary work,

which contemplates occasionally lifting up to ten pounds and frequently lifting or carrying small articles. He further asserts that his mental impairments preclude even unskilled work. The Commissioner maintains, and the court concludes, that substantial evidence supports ALJ Hogan's RFC determination.

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments; the assessment of a claimant's RFC is the responsibility of the ALJ. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2. If more than one impairment is present, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id*. §§ 404.1545(a), 416.945(a). The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[I]n evaluating the effect[] of various impairments upon a disability benefit claimant, the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them.").

Davis argues that ALJ Hogan mischaracterized the RFC. As noted above, ALJ Hogan determined that Davis was capable of performing a reduced range of sedentary work. ALJ Hogan's findings as to Davis's abilities to lift and carry (20 pounds occasionally, ten pounds frequently) are consistent with the requirements for work at the light exertional level, but the standing or walking (up to two hours) and sitting (six hours) capacities are those associated with sedentary work. *See* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5 (1983). To the extent that Davis asserts that this apparent discrepancy in nomenclature undermines ALJ Hogan's findings, the undersigned disagrees.

A person who is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally obviously has the ability to lift and/or carry up to 10 pounds at a time and occasionally docket files and like articles. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Moreover, because ALJ Hogan found that Davis's ability to stand and walk was limited to the demands of the sedentary level, and explicitly identifying the ability as sedentary, he would have overstated Davis's capacity if he had characterized the RFC as a range of light work. *See* 20 C.F.R. § 404.1545(a) ("Your [RFC] is the most you can still do despite your limitations."). The greater need to stand and walk at the light exertional level has been recognized as the principal difference distinguishing it from the sedentary exertional level. SSR 83-10, 1983 WL 31251, at *5 ("Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing-the primary difference between sedentary and most light jobs."). Notably, ALJ Hogan did not state that the lifting and carrying capacities he found for Davis were themselves at the sedentary level.

Regardless of the characterization of the range of work he found Davis could perform, there is no question about the lifting and carrying capacity ALJ Hogan found him to have. He stated the capacity specifically by pounds and frequency of activity in both the formal statement of Davis's RFC and again in the hypothetical questions to the Vocational Examiner ("VE"). Tr. 246, 291–92. Additionally, at step five of the sequential analysis, all the occupations the VE identified as available to Davis at the sedentary level. *Id.* at 253, 292–93. *See* DOT Nos. 559.687-034 (egg processor), 685.687-014 (cuff folder), and 521.687-086 (nut sorter). Thus, even if ALJ Hogan found that Davis could lift and carry only at the sedentary level, his

9

determination at step five would be proper as the work identified fell into that exertional category.

The argument that ALJ Hogan mischaracterized the range of work Davis can perform, even if deemed incorrect, fails. Accordingly, Davis's challenge to ALJ Hogan's RFC finding based on the language employed to describe the exertional level lacks merit and should be rejected.

Davis also contends he is unable to meet the physical demands of sedentary work. He maintains that, because of his chronic neck and back pain, he cannot perform the lifting and carrying requirements of sedentary work or sit for extended periods of time. However, ALJ Hogan found that the evidence did not support Davis's allegations of extreme pain. For instance, three months after his motor vehicle accident, he displayed negative straight leg raises and full strength and normal sensation in his extremities. Imaging studies showed only mild disease for which surgery was not required. Instead, providers treated Davis conservatively and he declined pain management. An August 2013 consultative exam noted positive straight leg raises and an antalgic gait but also observed that Davis could walk around the room without his cane, he had normal sensation and no spasms, and he was able to lift, carry, and handle objects. These treatment records undermine Davis's allegations. As the record failed to support Davis's statements of extreme pain and severe functional limitation, his allegations were not fully credited in formulating the RFC.

Finally, Davis asserts that the mental demands of sedentary work exceed his functional abilities. He contends that such work usually requires a person to be capable of understanding, remembering, and carrying out simple instructions; making simple, work-related decisions; responding appropriately to others; and dealing with changes in a routine work-setting. Davis

submits that his depression precludes even unskilled work. He also avers that this condition has worsened since the hearing and he has been hospitalized for suicidal ideations.

However, as with Davis's alleged physical limitations, ALJ Hogan determined that Davis's statements regarding his mental functioning were not supported by the record. ALJ Hogan's decision noted that in August 2013, Davis's mental status exam characterized him as alert, with good eye contact, appropriate mood, normal memory, and good concentration. Tr. at 249. A February 2015 mental status exam noted that Davis was depressed with fair eye contact, full affect, normal speech, logical thought processes, fair judgment, and intact cognition. *Id*. at 250. For this, Davis participated in therapy and took medications. *Id*.

The overall record demonstrates that Davis began seeking treatment for his metal health conditions relatively recently and his treatment has been conservative. *Id*. at 247. The evidence simply does not support significant mental health restrictions that Davis alleges during the relevant period.

In sum, the longitudinal record undermines Davis's assertion that he is more restricted in his functioning than the RFC determined. Davis has failed to show that additional restrictions were well-supported but omitted from the RFC. Although his statements alleged further limitations, as noted above, ALJ Hogan concluded that he was not fully credible. As that finding is supported by substantial evidence and due deference from the court, the present argument must be rejected.

### E. Credibility

Davis next contends that ALJ Hogan erred in failing to fully credit his allegations of pain and its limiting effects on his functional abilities. The Commissioner asserts that ALJ Hogan's

credibility analysis was proper. The undersigned finds that Davis has failed to show any error in ALJ Hogan's credibility analysis.

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings); medical history; a claimant's daily activities; the location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication or other treatment for relief of pain or other symptoms; and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig* at 595–96. But the ALJ is not obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *2.[3]

---

[3] Subsequent to the ALJ's decision, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). The more recent Ruling eliminated the term "credibility" noting that "subjective symptom evaluation is not an examination of an individual's character[]" and directed that the determination "contain specific reasons for the

The ALJ has full discretion to weigh the subjective statements with the objective medical evidence and other matters of record. *Craig*, 76 F.3d at 595 (holding that claimant's allegations of pain need not be accepted to extent that they are inconsistent with the record); *see also Hawley* v. *Colvin*, No. 5:12-cv-260-FL, 2013 WL 6184954, at *15 (E.D.N.C. Nov. 14, 2013) (ALJ need not accept claimant's claims at face value). In a district court's review, the ALJ's findings are entitled to great weight because of the ALJ's ability to observe and evaluate testimony firsthand. *Shively*, 739 F.2d at 989–90.

ALJ Hogan found that Davis was partially credible. Tr. at 248. Although he found that Davis had impairments that could reasonably expect to produce the symptoms he alleged, his statements as to the intensity, persistence, and limiting effects of those symptoms were not fully believable. *Id.*

Davis contends that an ALJ must give specific reasons for the credibility finding. He maintains that ALJ Hogan erred in discrediting her subjective statements of pain, asserting Fourth Circuit case law is clear that a claimant is not required to present objective evidence of pain so intense that it limits the claimant's activities. *See Craig*, 76 F.3d at 595–96 (an ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence).

Davis maintains that his testimony is supported by the evidence and therefore should be given more weight. Davis contends that the record supports findings that he cannot lift more than five pounds, can stand for only 20 minutes and sit for only 10–15 minutes, and requires a cane. Davis also maintains that ALJ Hogan failed to credit conclusions that his depression and pain

---

weight given to the individual's symptoms[.]" *Id*. Because SSR 96-7p was in effect at the time the ALJ's decision, the undersigned will review the decision under SSR 96-7p. *See Keefer v. Colvin*, C/A No. 1:15-4738-SVH2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

significantly limit his activities, he would be off task for 20% of the time, and his medications make him drowsy.

Despite Davis's allegations, it is well-settled that subjective complaints alone cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a). As noted above, an ALJ is not required to accept a claimant's unsubstantiated statements. Here, ALJ Hogan noted the routine and conservative nature of Davis's treatment. Tr. at 252. One of Davis's providers also characterized his treatment as routine and conservative, noting also that he was deemed a nonsurgical candidate. *Id*. at 248, 252. An ALJ may reasonably conclude that an alleged impairment is not disabling as a claimant asserts if he requires only conservative treatment. *Dunn v. Colvin*, 607 F. App'x. 264, 275 (4th Cir. 2015); *see also Richardson v. Colvin*, No. 4:14-CV-00125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (unpublished) (finding conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015).

Additionally, although Davis contends that he can lift no more than five pounds, his medications make him drowsy, and that he he must lie down several hours per day, ALJ Hogan noted that the record did not support these limitations. Tr. at 252. Davis's credibility is also eroded because his statements of severe limitations are inconsistent with his reported activities. For instance, although he stated he could sit for only 10–15 minutes, ALJ Hogan observed that he appeared to sit comfortably at the hearing, which lasted over one hour. *Id*.

In sum, the evidence supports ALJ Hogan's credibility determination. As Davis has only show disagreement, nor error, with ALJ Hogan's evaluation of this evidence, his argument on this issue lacks merit. *See Johnson*, 434 F.3d at 653 (reviewing court should not undertake to

14

reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

III. **Conclusion**

For the forgoing reasons, the court recommends that the court deny Davis's Motion for Judgment on the Pleadings (D.E. 17), grant Berryhill's Motion for Judgment on the Pleadings (D.E. 21), and affirm the Commissioner's determination.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation, receive further evidence, or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Dated: August 7, 2017

*Robert T. Numbers II*
Robert T. Numbers, II
United States Magistrate Judge