IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-766-FL

| | | |
|---|---|---|
| JAMES O. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on cross-motions for judgment on the pleadings. (DE 17, 21). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. (DE 23). Plaintiff timely objected to the M&R, (DE 24), and defendant made no response. Therefore, the issues raised are ripe for ruling. For the reasons that follow, the court adopts in part the M&R, rejects it in part, and remands to defendant for further proceedings.

## BACKGROUND

Plaintiff protectively filed two applications for disability benefits July 12, 2013, alleging disability beginning April 16, 2012. Both applications were denied initially and upon reconsideration. Thereafter, plaintiff requested hearing before an administrative law judge ("ALJ"), who, after hearing held May 29, 2015, denied plaintiff's claims June 25, 2015. Following the ALJ's denial of his application, plaintiff timely requested review before the Appeals Council. The Appeals

Council denied plaintiff's request for review August 11, 2016, leaving the ALJ's decision as defendant's final decision. Plaintiff then filed a complaint in this court seeking judicial review.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 16, 2012. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; soft tissue injuries, status–post motor vehicle accident; history of right femur fracture; obesity; and an affective disorder. At step three, the ALJ determined that these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in the regulations. See 20 C.F.R. § 404, Subpt. P, App.1.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: has the capacity to lift and carry, push and pull up to ten pounds frequently and 20 pounds occasionally, and to stand and walk for up to two hours in an eight-hour workday, and to sit for six hours in an eight-hour workday; could never climb ladders, scaffolds, or ropes, occasionally climb ramps and would need to avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery; would need the flexibility to use a hand held assistive device such as a cane while walking; could understand, remember, and carry out simple instructions, which is defined to mean activity that is consistent with a reasoning level of "two" or "three" as defined in the Dictionary of Occupational Titles; could sustain attention and concentration sufficient to carry out those simple instructions over the course of an eight-hour workday; could work in occupations that require occasional contact with co-workers, supervisors, and the general public; and would be limited to low stress work, which is specifically defined to mean: no fast paced production, only simple work related decisions, and few or no changes in the work setting.

At step four, the ALJ concluded plaintiff was unable to perform his past relevant work as a construction worker, dump truck driver, or power shovel operator. At step five, the ALJ determined that jobs exist in the national economy in significant numbers that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.   Analysis

In his objections, plaintiff argues that the ALJ's RFC determination pertaining to plaintiff's physical and mental capacity was not supported by substantial evidence and was not adequately explained. In support of this argument, plaintiff relies upon medical records assessing plaintiff's physical and mental capacity, including records of psychological diagnoses generated between the date of the ALJ's decision and the Appeals Council's denial of review.

   1.   Pain Allegations

The court addresses first plaintiff's argument that his medical records demonstrate inability to work due to chronic pain. In assessing credibility of plaintiff's pain allegations, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and (2) the ALJ must evaluate the credibility of the statements regarding those symptoms. Craig v. Chater, 76 F.3d 585, 594–96 (4th Cir. 1996). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . . laboratory findings," "daily activities," and "medical treatment." Id. at 595 (internal quotations omitted). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

5

weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

At step one, the ALJ found that plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, including pain. (Tr. 248). At step two, the ALJ found that plaintiff's testimony regarding the intensity of pain was not entirely credible. (Tr. 252). In support of this finding, the ALJ discussed several medical sources indicating that plaintiff's pain was not as severe as claimed. In particular, the ALJ considered medical evaluations authored by Dr. Anjali Gupta, M.D. ("Gupta"), Roger Ordronneau, PA-C ("Ordronneau"), Dr. David Musante, M.D. ("Musante"), Dr. Constant Masere, M.D. ("Masere"), Dr. Haresh Kathard, M.D. ("Kathard"), and Dr. Edwin Swann, M.D. ("Swann"). Each of the foregoing sources assessed plaintiff's pain at various levels of intensity causing corresponding levels of functional impairment.

With respect to the opinion of Gupta, the ALJ did not rest final determination upon that opinion, because Gupta's temporary assessment addressed plaintiff's condition only for the days following a vehicle accident taking place April 16, 2012. (See Tr. 248). The ALJ gave little weight to the opinion of Ordronneau because that opinion, too, assessed only temporary limitations and was superceded by the later opinion of Musante. (See Tr. 249). The ALJ assigned moderate weight to the opinion of Musante, but noted that Mustane's opinion was entitled to no more weight because where Mustante assessed that plaintiff should be "return[ed] to unrestricted duty, or at least activities as tolerated[,]" (Tr. 602), the opinion is too vague to support precise conclusions about plaintiff's RFC. (See Tr. 249).

Next, the ALJ considered the opinion of Masere, which was formed on the basis of a consultative examination conducted August 24, 2013. (See Tr. 249, 546). Masere assessed greater

6

limitations than reflected in the ALJ's RFC determination, including, in relevant part, an assessment that plaintiff could lift and carry up to only five pounds occasionally due to musculoskeletal pain. (See Tr. 547). However, the ALJ assigned little weight to Masere's opinion because it was not expressed in "vocationally relevant terms" and rested upon a single examination. (Tr. 249). Similarly, the ALJ gave little weight to the opinion of Kathard because where the extent of his assessment consisted of directing plaintiff to follow up with his primary care doctor, take prescribed pain medication, and avoid activities that worsen pain, Kathard's opinion was vague, tentative, and not expressed in vocationally relevant terms, and, thus, unsuitable to form the basis for RFC determination. (See Tr. 250).

Finally, the ALJ considered the opinion of Swann, the conclusions of which the ALJ adopted in determining plaintiff's RFC, except insofar as Swann assessed that plaintiff suffered visual limitations, which limitations the ALJ found entirely unsupported by the record. (Tr. 250–51). The ALJ gave substantial weight to Swann's opinion on the grounds that Swann is an expert well-versed in "program rules and the expected limitations of impairments" and "had the opportunity to review a substantial portion of the medical evidence of record." (Tr. 251).

The foregoing assignments of weight to opinion evidence evaluating plaintiff's pain are supported by substantial evidence and adequately explained where the ALJ accurately described the conclusions set forth in each source of evidence and explained that the opinion of Swann was credited over other opinions because it was grounded in expertise, set forth in specific terms, and based upon a larger universe of data than other opinion evidence in the record. (Id.)

Furthermore, based upon Swann's evaluation, the fact that plaintiff's overall treatment for pain was conservative in nature, and that plaintiff was able to sit through hearing held May 29, 2015,

7

which lasted over an hour despite plaintiff's testimony that he could sit no more than 15 minutes due to pain, the ALJ found that plaintiff's subjective reports of extreme, debilitating pain were unsupported by the record. (Tr. 252). Where this conclusion is indeed consistent with numerous sources of medical evidence and with the ALJ's observations at hearing, the ALJ's finding that plaintiff's pain was not debilitating is supported by substantial evidence and adequately explained. See Richardson, 402 U.S. at 401; Monroe, 826 F.3d at 190.

Plaintiff argues that the ALJ erred in reaching the foregoing conclusion. However, where the ALJ's relied upon medical evidence that supported factual filings announced in the decision, and where the ALJ explained why other medical and plaintiff's subjective allegations of pain were not credited as strongly as the opinion of Swann, the ALJ's decision was permissible under the standards set forth in Richardson and Monroe. Accordingly, where it is not this court's prerogative to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of [defendant,]" Mastro v. Afpel, 270 F.3d 171, 176 (4th Cir. 2001), there exists no basis to overturn the ALJ's assessment of plaintiff's allegations of pain and limitations resulting therefrom.

2. Mental Limitations

Plaintiff also objects to the M&R on the ground that the ALJ's determination pertaining to plaintiff's mental impairments was unsupported by substantial evidence. In assessing plaintiff's mental impairments, the ALJ considered plaintiff's subjective reports of depression given at hearing, a clinical assessment by Jessica Drennen, MSW, LCSWA ("Drennen"), a February 25, 2015, psychiatric evaluation by Victoria Payne, M.D. ("Payne"), and a report based upon a follow-up with Payne on April 28, 2015.

Plaintiff also notes additional evidence that was submitted to the Appeals Council, which evidence was generated after the ALJ announced decision on plaintiff's claim. (Tr. 2). Such additional evidence includes: 1) treatment notes from several providers of psychological services dated from July 6, 2015, to April 1, 2016; 2) additional medical records dated between July 10, 2015, and November 11, 2015; 3) a medical source statement from Payne dated November 25, 2015, opining that plaintiff hears voices, sees visions, and that two hospitalizations due to depression and suicidal ideation indicate the severity of plaintiff's condition; 4) a medical source statement from Dr. Godfried Arthur, M.D. ("Arthur"), dated December 15, 2015, opining that plaintiff's major depression, suicidal thoughts, and auditory hallucinations significantly affect plaintiff's functioning; and 5) a Medicaid decision from North Carolina Department of Health and Human Services ("NCDHS") dated December 22, 2015, by which decision NCDHS found plaintiff disabled under standards relevant in an action of that nature. (See id.). The appeals council acknowledged plaintiff's submission of the foregoing evidence, but ruled that no review of the ALJ's decision was warranted, holding that the foregoing evidence relates to only those dates following the ALJ's decision. (See id.).

"[Defendant] must consider evidence submitted with [a] request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y. Dep't. of Health & Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991) (en banc) (internal quotations omitted). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. New evidence need not have existed during that period before the date of the ALJ's decision and

9

must be considered if it has any bearing upon whether the claimant was disabled during the relevant time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987). Evidence generated subsequent to an ALJ's determination has bearing upon whether the claimant was disabled during the relevant period if the later-generated evidence "could be reflective of a possible earlier and progressive degeneration." Bird v. Comm'r. of Social Security Admin., 699 F.3d 337, 341 (4th Cir. 2012) (internal quotations omitted). Upon a remand directing consideration of new and material evidence relating to the period on or before the date of the ALJ's decision, defendant must "evaluate the entire record including the new and material evidence submitted." Wilkins, 953 F.2d at 95 (quotations omitted).

In this case, the evidence post-dating the ALJ's decision submitted to the Appeals Council is "new" because where it accounts for plaintiff's hospitalizations and diagnoses based thereon, the evidence is neither duplicative nor cumulative of other evidence in the record. See id. at 96. Said evidence is "material" because there is a reasonable possibility that consideration of the new evidence would have changed the outcome of the ALJ's assessment of plaintiff's mental functioning. See id. Finally, the evidence relates to the period on or before the date of the ALJ's decision where the apparently negative arc of plaintiff's mental functioning "could be reflective of a possible earlier and progressive degeneration." See Bird, 669 F.3d at 341. Remand, thus, is required for further proceedings evaluating the new evidence in conjunction with other evidence in the record. See Wilkins, 953 F.2d at 95.

On remand, the ALJ must account for evidence generated after June 25, 2015, to the extent such evidence may affect plaintiff's RFC determination prior to that time. Specifically, evidence submitted to the Appeals Council may suggest that plaintiff's mental impairments started

degenerating following the April 28, 2015, follow-up evaluation conducted by Payne, where such evidence includes hospitalizations and diagnoses of severe depression, anxiety, suicidal ideation, homicidal ideation, and auditory hallucinations. (See Tr. 219–25 (plaintiff admitted to Coastal Plain Hospital July 6, 2015, due to depression, homicidal ideation, psychosis, and auditory hallucinations), 141 (plaintiff admitted to Nash General Hospital August 26, 2015 due to depression, anxiety, suicidal ideation, homicidal ideation, and hallucinations), 44–76 (plaintiff admitted to Duke Hospital November 5, 2015, for depression and suicidal thoughts), 4–22 (plaintiff admitted to Mariah Parham Medical Center March 29, 2016, for depression and suicidal thoughts)). Therefore, defendant must consider and explain whether this later-generated evidence may shed light, if any, upon plaintiff's RFC during the period before June 25, 2015. See Wilkins, 953 F.2d at 95–96.

Defendant argues, and the magistrate judge agreed, that the ALJ properly considered all evidence of record pertaining to plaintiff's mental condition prior to the date of the ALJ's decision June 25, 2015. The ALJ indeed considered medical evidence existing as of the date of Payne's April 28, 2015, follow-up examination and plaintiff's reports of psychological symptoms existing in the record and reaffirmed at hearing May 29, 2015, and explained that such evidence was not found determinative in light of the conservative nature of treatment provided to plaintiff and in light of the "relatively mild" nature of plaintiff's psychotic symptoms as noted by Payne. (Tr. 709). However, defendant's argument fails where evidence of plaintiff's mental health status following the date of decision suggest deterioration with onset date prior to June 25, 2015, with a reasonable possibility that such evidence supports a finding of disability prior to that time. Bird, 699 F.3d at 341. Accordingly, it is incumbent upon defendant to consider that later-generated evidence on remand and explain its effect upon plaintiff's RFC determination, if any.

**CONCLUSION**

Based on the foregoing, the court ADOPTS the recommendation in the M&R in part, REJECTS it in part, GRANTS plaintiff's motion (DE 17), DENIES defendant's motion (DE 21), and REMANDS to defendant for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

SO ORDERED, this the 29th day of September, 2017.

*[signature]*
LOUISE W. FLANAGAN
United States District Judge